UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARCUS QUALLS,<br>Individually and on Behalf of All<br>Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EOG RESOURCES, INC.<br><br>Defendant. | § § § § § § § § § § § § | Civil Action No.<br>4:18-cv-00666<br>(*Transferred from the District of New Mexico*) |

**DEFENDANT EOG RESOURCES INC.'S
MOTION TO STAY PROCEEDINGS PENDING ARBITRATION**

Defendant EOG Resources, Inc. ("EOG") files this Motion to Stay Proceedings Pending Arbitration.

## I.  INTRODUCTION

Plaintiff Marcus Qualls ("Qualls") asks this Court to litigate his claims against EOG under the Fair Labor Standards Act ("FLSA") and New Mexico Minimum Wage Act ("NMMWA") (the "*EOG Lawsuit*") while a parallel, nearly identical lawsuit that Qualls brought against a related defendant, Bedrock PC 1099, is currently in arbitration. The arbitration arises out of the lawsuit styled *Qualls v. Bedrock PC 1099 LLC*, No. 4:17-cv-03232, U.S. District Court, Southern District of Texas (the "*Bedrock Arbitration*").

The facts and claims pleaded in the *EOG Lawsuit* and the *Bedrock Arbitration* reveal that these two cases are indistinguishable in almost every way except for the named defendant. Allowing the *EOG Lawsuit* to proceed during the pendency of the *Bedrock Arbitration* will not only waste judicial resources, but also prejudice Bedrock's chance at a fair arbitration. As a result, EOG requests that this Court issue a mandatory stay under Section 3 of the Federal Arbitration Act to stay this case pending resolution of the *Bedrock Arbitration*, or, at a minimum grant a discretionary stay.

## II. BACKGROUND

### A. Qualls Was Hired by Bedrock PC and Provided Consulting Services to EOG through Bedrock Petroleum Consultants, LLC and/or Bedrock PC 1099.

Bedrock Petroleum Consultants, LLC is the parent company of Bedrock PC 1099 (collectively "Bedrock"). Doc. No. 10-1, *EOG Lawsuit*, ¶ 2. Bedrock is an oilfield services company that provides, among other things, expert personnel to oil and gas operators like EOG. *See id.* ¶ 5. Bedrock enters into Consulting Agreements with its personnel like Qualls, who are then sent to Bedrock's customers to perform services. *Id.* ¶ 7, 8. Qualls operates his own company, Neloms Consulting, which entered into a Consulting Agreement with Bedrock on or about May 7, 2017. *Id.* ¶ 7.

Pursuant to a Master Services Agreement between Bedrock and EOG, Qualls provided services to EOG in New Mexico. *Id.* ¶ 8. During this time, Bedrock invoiced EOG for Qualls's services. *Id.* ¶ 9. EOG paid Bedrock's invoices, and Bedrock, in turn, was responsible for paying Qualls properly. By Bedrock's own admission, Bedrock paid Qualls via direct deposit. *Id.* EOG had no part in how Qualls was paid.

### B. Qualls Initially Filed This Lawsuit Against Three Defendants—EOG, Bedrock, and Jonathan Falcon.

Qualls initially filed this lawsuit on September 7, 2017, in the District of New Mexico against EOG, Bedrock, and Jonathan Falcon ("Falcon") (collectively referred to herein as "Initial Defendants"). Doc. No. 1, *EOG Lawsuit*. Qualls alleged that the Initial Defendants, acting as his joint employers, misclassified him as an independent contractor, failed to pay him overtime, and willfully failed to maintain accurate pay records as required under the FLSA and NMMWA. Doc. 1, *EOG Lawsuit*, at ¶¶ 1, 2, 44. All of these allegations stemmed from Qualls's time performing services as a Bedrock consultant for EOG from April 2017, until August 2017. *Id.* at ¶ 1. Qualls also pleaded a claim for a collective action under the FLSA. *Id.* at ¶ 3.

Bedrock and Falcon filed a Motion to Dismiss or, Alternatively, Motion to Transfer Venue, on October 11, 2017, seeking dismissal because, among other

things, Qualls signed an arbitration agreement with Bedrock.  Doc. Nos. 10-11, *EOG Lawsuit*.

> C. **Qualls Filed an Amended Complaint Dismissing the Claims Against Bedrock and Falcon, and Filed a Separate, Identical Lawsuit in the Southern District of Texas.**

Despite initially asserting all of his claims against the three Initial Defendants in one lawsuit, Qualls filed an Amended Complaint on October 24, 2017, dismissing the claims against Bedrock and Falcon from this lawsuit.  Doc. No. 25, *EOG Lawsuit*, ¶ 1.  EOG became the only remaining defendant.  *Id.*

That same day, Qualls filed a separate, nearly identical lawsuit in the Southern District of Texas against Bedrock.  *See* Doc. No. 1, *Bedrock Arbitration*.  On December 13, 2017, Bedrock and Qualls jointly agreed to submit their case to arbitration.  Doc. No. 8, *Bedrock Arbitration*.  On February 27, 2018, EOG moved to transfer the case to the Southern District of Texas, which Qualls did not oppose.  Doc. No. 32, *EOG Lawsuit*.  The case was assigned to this Court.

Notably, the allegations in the *EOG Lawsuit* and *Bedrock Arbitration* are nearly identical, with Qualls only swapping EOG and Bedrock where applicable.  Illustrative of this point are the following mirror-image allegations that Qualls makes in the *EOG Lawsuit* before this Court and in the *Bedrock Arbitration* before an arbitration panel:

29805840.1
- 4 -

| *EOG Lawsuit* | *Bedrock Lawsuit (Currently in Arbitration)* |
|---|---|
| EOG was formerly a joint and/or co-employer of Plaintiff Marcus Qualls. ¶ 1. | Bedrock was formerly a joint and/or co-employer of Plaintiff Marcus Qualls. ¶ 1. |
| While employed by EOG, Qualls was misclassified as an independent contractor, despite the fact that he worked full time for EOG, and virtually every aspect of his job was controlled by EOG. ¶ 1. | While employed by Bedrock, Qualls was misclassified as an independent contractor, despite the fact that he worked full time for Bedrock, and virtually every aspect of his job was controlled by Bedrock. ¶ 1. |
| EOG violated 29 U.S.C. § 201 et. seq. by willfully failing to pay Plaintiff or others similarly situated overtime compensation. ¶ 41. | Bedrock violated 29 U.S.C. § 201 et. seq. by willfully failing to pay Plaintiff or others similarly situated overtime compensation. ¶ 41. |
| EOG willfully failed to maintain accurate employee pay records, including the number of hours worked per workweek by Plaintiff and other similarly situated employees. ¶ 42. | Bedrock willfully failed to maintain accurate employee pay records, including the number of hours worked per workweek by Plaintiff and other similarly situated employees. ¶ 42. |
| EOG violated and continues to violate New Mexico Wage Act by employing employees and regularly and repeatedly failing to pay employees for all hours worked and pay overtime wages. ¶ 46. | Bedrock violated and continues to violate New Mexico Wage Act by employing employees and regularly and repeatedly failing to pay employees for all hours worked and pay overtime wages. ¶ 46. |
| Qualls seeks to certify a collective action under the FLSA and/or class action under the NMMWA of "all oilfield workers hired through Bedrock and working at EOG facilities in New Mexico during the past 3 years who were classified as independent contractors and paid a day-rate and/ or | Qualls seeks to certify a collective action under the FLSA and/or class action under the NMMWA of "all oilfield workers hired through Bedrock and working at EOG facilities in New Mexico during the past 3 years who were classified as independent contractors and paid a day-rate and/ or |

| | |
|---|---|
| straight time with no overtime." ¶ 3. | straight time with no overtime." ¶ 3. |

In the *Bedrock Arbitration*, the arbitration panel has been selected and the case is proceeding accordingly. In the *EOG Lawsuit*, the Court has not yet entered a scheduling order and no substantive activity has taken place.

### III. SUMMARY OF A MANDATORY STAY UNDER THE FEDERAL ARBITRATION ACT

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements. The FAA's language reflects the strong liberal policy in favor of arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). For example, Section 3 of the FAA mandates that a court stay proceedings upon application of one of the parties where the underlying lawsuit is referred to arbitration under a binding arbitration agreement. 9 U.S.C. § 3; *Tittle v. Enron Corp.*, 463 F.3d 410, 417 n.6 (5th Cir. 2006) (explaining that "a stay is mandatory at the request of a party if the dispute is arbitrable").

The Fifth Circuit has interpreted the liberal policy favoring arbitration to mean that "any of the parties to the suit can apply to the court for a mandatory stay, and the court must grant the stay if the claim at issue is indeed covered by the arbitration agreement." *Waste Mgmt., Inc. v. Residuos Industriales Muliquim, S.A.*, 372 F.3d 339, 342 (5th Cir. 2004).

The principle of staying related cases also applies here. It is now well-established in this Circuit that non-signatories can move for a mandatory stay under Section 3. *See Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002); *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000); *Subway Equip. Leasing v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999).

Even if a mandatory stay under Section 3 is not warranted, a court may still exercise its discretion to stay pending, parallel cases to control and manage its docket. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009). This right extends to non-signatories who ask the court to invoke its discretion to stay litigation pending the resolution of a parallel arbitration. *Suzlon Infrastructure, Ltd. v. Pulk*, No. 4:09-cv-02206, 2010 WL 3540951, at *4 (S.D. Tex. Sept. 10, 2010).

Because the *EOG Lawsuit* and the *Bedrock Arbitration* are based on the same operative facts and seek relief under identical statutes, the Court should grant a mandatory stay under Section 3 of the FAA. In the alternative, the Court should invoke its broad discretion to grant a discretionary stay to avoid a waste of time, energy, and judicial resources.

## IV. ARGUMENTS AND AUTHORITIES

A. **The EOG Lawsuit Should Be Stayed Pending the Outcome of the Bedrock Arbitration Under FAA Section 3.**

29805840.1
- 7 -

The Fifth Circuit considers a variety of factors to determine whether a non-signatory may invoke Section 3's mandatory stay provision. These factors include (1) whether the arbitrated and litigated disputes involve the same operative facts, (2) whether the claims asserted in the arbitration and the litigation are "inherently inseparable," and (3) whether the litigation could have a "critical impact" on the arbitration. *Waste Management*, 372 F.3d at 343. Here, all of the factors are present and weigh in favor of granting a mandatory stay.

> 1. *The EOG Lawsuit and Bedrock Arbitration Arise Out of the Same Operative Facts.*

The *EOG Lawsuit* and *Bedrock Arbitration* are both based on Qualls's performance of services as a Bedrock consultant for EOG. *Compare* Doc. 1, *Bedrock Arbitration*, at ¶ 1, *with* Doc. 25, *EOG Lawsuit*, at ¶ 1. Tellingly, and as highlighted in the chart above, there is simply no question that this litigation and the *Bedrock Arbitration* arise out of the same set of operative facts. *Waste Management*, 372 F.3d at 343. In fact, Qualls alleges that EOG and Bedrock are his "joint and/or co-employer." *Compare* Doc. 1, *Bedrock Arbitration*, at ¶ 1, *with* Doc. 25, *EOG Lawsuit*, at ¶ 1.

Because the underlying facts are identical, this Court would have to analyze the same factual circumstances as the arbitrator in the *Bedrock Arbitration* to resolve Qualls's claims under FLSA and NMMWA. For instance, key issues in both cases are whether EOG and Bedrock jointly employed Qualls; whether one or

the other entity employed Qualls; whether no entity employed Qualls and he was an independent contractor. Any questions this Court or the arbitrator resolves will necessarily involve identical evidence, such as EOG and Bedrock's relationship with each other, as well as EOG and Bedrock's pay practices, policies, and procedures at EOG's New Mexico location.

In addition, both the *EOG Lawsuit* and the *Bedrock Arbitration* assert class claims on behalf of the same, overlapping putative class for the exact same time period. *Compare EOG Lawsuit* ¶ 3, *with Bedrock Arbitration* ¶ 3 ("[A]ll oilfield workers hired through Bedrock and working at EOG facilities in New Mexico during the past 3 years who were classified as independent contractors and paid a day-rate and/ or straight time with no overtime."). This creates a scenario that could lead to confusion among putative class members. At worst, it creates a scenario where the Court and arbitrator could issue conflicting rulings that result in prejudice to class members. For instance, this Court could decide that any statute of limitations is limited to two years because there was no willful FLSA violation. On the other hand, the arbitration panel could decide that any statute of limitations is three years, which would revive claims that this Court has ruled as time barred.

Courts have granted stays involving far fewer similar facts than those present here. *Suzlon Infrastructure*, 2010 WL 3540951, at *8 (granting defendant's motion to stay where the operative facts were "not identical" but

overlapped significantly). The Court need only examine the complaint here and the complaint in the *Bedrock Arbitration* to determine that they arise from identical or nearly identical circumstances. Accordingly, EOG satisfies the first factor of the mandatory stay test.

### 2. *Qualls's Claims in the EOG Lawsuit and Bedrock Arbitration are Indistinguishable.*

The second factor courts analyze in determining whether to issue a mandatory stay is whether the claims asserted in the lawsuit are "inherently inseparable" from the claims in the arbitration. *Waste Management*, 372 F.3d at 343. Again, the claims in the *EOG Lawsuit* and the *Bedrock Arbitration* are naturally indistinguishable. Qualls is claiming in both cases that EOG and Bedrock were his joint and co-employers. The only difference in the two proceedings is the named defendant. *See Hill*, 282 F.3d at 348 (holding that non-signatory defendant was entitled to a stay where plaintiff "ma[de] identical claims against both defendants," one of which was already in arbitration with the plaintiff). A review of each complaint demonstrates that Qualls seeks **identical** claims and **identical** relief under **identical** statutes: the FLSA and the NMMWA. *Compare* Doc. No. 1, *Bedrock Lawsuit*, at ¶¶ 2, 41-42, 46, *with* Doc. No. 25, *EOG Lawsuit*, at ¶¶ 2, 41-42, 46. Moreover, the class claims in both lawsuits cover the exact same putative class members. *Compare EOG Lawsuit* ¶ 3, *with Bedrock Arbitration* ¶ 3

The Court could not resolve the issues Qualls raises against EOG without also resolving the critical issues to the *Bedrock Arbitration*. *See Westport Petroleum, Inc. v. Stena Bulk, Ltd.*, No. 4:05-cv-04158, 2006 WL 4586213, at *4 (S.D. Tex. Sept. 5, 2006) (explaining how the court "could not resolve the claims and issues [plaintiff] raises against the alleged commercial managers without considering many of the claims and issues that are also critical to the arbitration"). For instance, the joint employer test requires the Court to analyze the relationship between both alleged employers to determine if one, both, or neither were Qualls's employer. *See Mendez v. Timberwood Carpentry & Restoration, LLC*, No. 4:09-cv-00490, 2009 WL 4825220, at *6 (S.D. Tex. Dec. 9, 2009). In addressing this issue, the Court would necessarily have to also assess Qualls's relationship with Bedrock, which is critical to the *Bedrock Arbitration*. In doing so, there is a risk of inconsistent results. As a result, the second factor weighs in favor of granting a mandatory stay.

### 3. *Permitting the EOG Lawsuit to Go Forward Would Undermine Arbitration Proceedings Between Bedrock and Qualls.*

The ultimate reason courts allow non-signatories to invoke Section 3's mandatory stay provision is to prevent parallel litigation from "destroy[ing] the signatories' right to a meaningful arbitration." *Waste Management.*, 372 F.3d at 343; *see also Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999).

Qualls and Bedrock ***mutually agreed*** to arbitrate their claims through the Consulting Agreement. Doc. No. 6, *Bedrock Arbitration*. Neither party questions the applicability of the arbitration agreement to their claims—in fact, both parties ***jointly agreed*** to arbitration in lieu of ligation. Doc. No. 8, *Bedrock Arbitration*.

There is no question that Qualls's claims against Bedrock fall squarely within the arbitration agreement and that both parties prefer to resolve the claims in arbitration. *Id.* In order to respect the integrity of their arbitration agreement, the arbitration must proceed without any interference from an identical lawsuit. *Harvey*, 199 F.3d at 796 (granting stay where litigation would critically impact the arbitration such that the "the arbitration proceedings would be both redundant and meaningless")

Indeed, there is a risk that the *Bedrock Arbitration* would be rendered redundant or meaningless should the *EOG Lawsuit* proceed at a quicker pace. *Suzlon Infrastructure, Ltd*, 2010 WL 3540951, at *8. For instance, this Court could determine certain questions of fact or law that the arbitrator is also deciding, especially because the two proceedings contain class claims on behalf of an identical class. "Given the binding effect of a federal judgment, as well as the factual similarities in the claim, there [is] now way the litigation could proceed without 'hav[ing] a critical impact on the arbitration.'" *Mosaic Underwriting Serv., Inc. v. Moncla Marine Operations, L.L.C.*, No. 2:12-cv-02183, 2013 WL

2903083, at *7 (E.D. La. June 12, 2013) (granting non-signatory defendant's motion to stay); *see also MobileMedia Ideas LLC v. Research in Motion Ltd.*, No. 3:11-CV-2353-N, 2012 WL 10464129, at *1 (N.D. Tex. Mar. 21, 2012) (staying claims based on the same operative facts out of concern litigation would "render the arbitration redundant.").

The *Bedrock Arbitration* panel could naturally be swayed to follow whatever factual and legal determinations this Court makes. *Id.* Conversely, and perhaps most troublesome, the panel could rule opposite the Court to maintain the appearance of impartiality, running the "risk [of] inconsistent results" applicable to the same individual (Qualls). *Westport Petroleum*, 2006 WL 4586213, at *4.

Allowing the *EOG Lawsuit* to continue in light of the *Bedrock Arbitration* would "thwart the strong federal policy in favor of arbitration." *Hill*, 282 F.3d at 348. Because the *EOG Lawsuit* threatens to critically impact the arbitration, this third and final factor also weighs in favor of granting the mandatory stay. *Harvey*, 199 F.3d at 796.

**B.     In the Alternative, the Court Should Exercise Its Discretionary Power to Stay this Proceeding.**

At a minimum, a discretionary stay is appropriate here. Courts have the discretionary power to stay litigation to "control . . . its docket with economy of time and effort for itself, for counsel, and for litigants." *Citgo Petroleum Corp. v. M/T Bow Fighter*, No. 4:07-CV-02950, 2009 WL 960080, at *6 (S.D. Tex. Apr. 7,

2009). A discretionary stay would benefit this Court by conserving judicial resources. *Broussard*, 2016 WL 879995, at *7 (E.D. La. Mar. 8, 2016); *see Mosaic*, 2013 WL 2903083, at *7 ("Courts . . . have repeatedly granted stays pending arbitration where the nonarbitrable issues overlap the arbitrable issues, thus minimizing inconsistent results and conserving judicial resources.").

In addition, courts often grant a discretionary stay when some of the mandatory stay factors are satisfied. *Broussard v. First Tower Loan*, LLC, No. 2:15-cv-01161, 2016 WL 879995, at *6 (E.D. La. Mar. 8, 2016) (granting a discretionary stay after finding that two of the mandatory stay factors were satisfied because the operative facts were identical and the claims were significantly similar); *Suzlon Infrastructure*, 2010 WL 3540951, at *11 (same). This is especially true because the outcome of the arbitration "may be helpful to litigation, lending further support" to a discretionary stay. *Mosaic*, 2013 WL 2903083, at *7.

Because this lawsuit has the potential to destroy a fair, mutually agreed upon arbitration from proceeding, a mandatory stay under Section 3 is warranted. At a minimum, a discretionary stay is necessary pending resolution of the *Bedrock Arbitration*.

V. **CONCLUSION**

Accordingly, Defendant EOG Resources, Inc. prays that the Court grant its Motion to Stay Proceedings Pending Arbitration and provide it any and all other relief to which it is entitled.

Dated: April 20, 2018

Respectfully submitted,

OF COUNSEL:

Kimberly Cheeseman
State Bar No. 24082809
Federal I.D. No. 2254668
E-mail:
kimberly.cheeseman@nortonrosefulbright.com

Jesika Silva Blanco
State Bar No. 24098428
Federal I.D. No. 2780677
E-mail:
jesika.blanco@nortonrosefulbright.com

Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone:  713.651.5112
Facsimile:  713.651.5246

/s/ Carter Crow
   M. Carter Crow
   State Bar No. 05156500
   Federal I.D. No. 15048
   carter.crow@nortonrosefulbright.com

NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:  (713) 651-5151
Facsimile:   (713) 651-5246

*Attorney-in-Charge for*
*EOG Resources, Inc.*

CERTIFICATE OF CONFERENCE

Pursuant to the local rules, counsel for Defendant conferred with counsel for Plaintiff on April 20, 2018, and Plaintiff is unopposed to the relief sought herein.

CERTIFICATE OF SERVICE

This pleading was served on the following opposing counsel via the Court's

CM/ECF service in compliance with Rule 5 of the Federal Rules of Civil Procedure on April 20, 2018.

Josh Borsellino
Borsellino, P.C.
1020 Macon St. Suite 15
Fort Worth, Texas 76102
Telephone: (817) 908-9861
Fasmicile: (817) 394-2412
josh@dfwcounsel.com

                                        */s/ Kimberly Cheeseman*
                                        Kimberly F. Cheeseman

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARCUS QUALLS,<br>Individually and on Behalf of All<br>Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>EOG RESOURCES, INC.<br><br>  Defendant. | **Civil Action No.<br>4:18-cv-00666**<br>*(Transferred from the District of New Mexico)* |

**ORDER**

On this day, the Court considered Defendant's Motion to Stay Pending Arbitration. Having considered the Motion, it is hereby GRANTED.

SIGNED ON THIS \_\_\_\_ day of _____, 2018.

_____
DAVID HITTNER
UNITED STATES DISTRICT JUDGE