United States District Court
Southern District of Texas

**ENTERED**

May 22, 2018

David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MARCUS QUALLS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-666 |
| | § | |
| EOG RESOURCES, INC., *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to stay (Dkt. 40) filed by defendant EOG Resources, Inc. ("EOG") and a motion for equitable tolling (Dkt. 42) filed by plaintiff Marcus Qualls. Having considered the motions, responses, replies, and applicable law, the court is of the opinion that the motion to stay should be GRANTED and the motion for equitable tolling should be GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

In this Fair Labor Standards Act ("FLSA") case, Qualls worked as a consultant for EOG. Dkt. 25 at 1. Qualls interviewed and was hired through a third party, Bedrock PC 1099 ("Bedrock"). *Id.* Qualls alleges that EOG misclassified him as an independent contractor even though he was actually an employee. *Id.* at 2. During his time working with EOG, Qualls typically worked over forty hours a week but was not paid overtime. *See id.*

On September 7, 2017, Qualls sued EOG, Bedrock, and Bedrock's CEO, Jonathan Falcon, for violating the FLSA and the New Mexico Wage Act by failing to properly pay him for the time worked. Dkt. 1. His complaint included collective action allegations under the FLSA and class

action allegations under Rule 23 of the Federal Rules of Civil Procedure.  *Id.* at 6–9.  Both classes

consisted of:

> All oilfiled workers hired by Bedrock and working for EOG in New Mexico
> during the past 3 years who were classified as independent contractors and
> paid a day-rate and/or straight time with no overtime.[1]

*Id.* at 2.

Bedrock and Falcon filed a motion to dismiss for lack of personal jurisdiction, motion to

transfer venue, and motion to compel arbitration and stay proceedings.  Dkts. 10, 11.  In response,

Qualls filed an amended complaint dismissing Bedrock and Falcon.  Dkt. 25.  Qualls then filed

another suit against Bedrock in the Southern District of Texas and the parties agreed to submit their

case to arbitration.  Dkt. 42 at 2.  Then, EOG moved to transfer the case to the Southern District of

Texas, and Qualls did not oppose.  Dkt. 32.

In the instant motions, EOG asks the court to stay the proceedings pending the arbitration

between Qualls and Bedrock, and Qualls asks the court to toll the statute of limitations for FLSA

opt-in plaintiffs from the date EOG filed its motion to stay until the court rules on a motion to certify

the class.  Dkts. 40, 42.

## II. MOTION TO STAY

### A.    Legal Standard

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements.

*See* 9 U.S.C. §§ 2, 3.  Section 3 requires that a court stay proceedings upon application of one of the

---

[1]In his amended complaint, Qualls amends the class as follows:
> All oilfield workers hired through Bedrock and working at EOG facilities in New
> Mexico during the past 3 years who were classified as independent contractors and
> paid a day-rate and/or straight time with no overtime.

Dkt. 25 at 2.

parties where the underlying lawsuit is referred to arbitration under a binding arbitration agreement. *Id.* § 3.   When a non-signatory attempts to invoke § 3's mandatory stay provision, a stay is only warranted if: (1) "the arbitrated and litigated disputes . . . involve the same operative facts"; (2) "the claims asserted in the arbitration and litigation [are] 'inherently inseparable'"; and (3) "the litigation [will] have a 'critical impact' on the arbitration."   *Waste Mgmt., Inc. v. Residuous Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004) (citations omitted).   "The question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Id.*

Even if a mandatory stay is not warranted, a case may still be stayed "in accordance with the court's inherent authority."   *Citgo Petroleum Corp. v. M/T Bow Fighter*, No. H–07–2950, 2009 WL 960080, at *5 (S.D. Tex. Apr. 7, 2009) (Miller, J.).   A district court "has broad discretion to stay proceedings as incident to its power to control its own docket."   *Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636 (1997).   "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."   *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163 (1936). In the context of granting a discretionary stay pending arbitration, the Fifth Circuit has stated that "the moving party bears a heavy burden to show why a stay should be granted absent statutory authorization, and a court should tailor its stay so as not to prejudice other litigants unduly."   *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985).   Further, although inherent power should not be abused, it is discretionary and "largely unreviewable."   *Id.*

**B.    Analysis**

EOG argues that a stay is mandatory under § 3 of the FAA and *Waste Management*.  Dkt. 40 at 8–13.  Alternatively, EOG argues that a discretionary stay should be implemented by the court.  *Id.* at 13–14.  Qualls argues that the factors for a mandatory stay are not present and that the court should decline to impose a discretionary stay for the same reason.  Dkt. 45 at 3–9.

The court agrees with EOG that § 3 and *Waste Management* require a mandatory stay in this case.  First, the litigation and arbitration involve the same operative facts.  Qualls argues that "EOG cannot show that the facts and issues are identical, intertwined or even overlapping, nor would any of the issues being tried here render the arbitration redundant or vice versa."  Dkt. 45 at 6.  However, the facts at issue are nearly identical.  In both cases, Qualls alleges that he performed work for EOG through Bedrock and that he was not paid overtime for that work.  Dkt. 40 at 5.  Qualls also argues that both cases will have to consider which company exercised control over him.  Dkt. 45 at 4.  The court agrees.  And because the relevant work performed by Qualls is the same for both companies, the same facts will necessarily be relevant in both cases to determine which company exercised control.  Thus, the operative facts in both cases are the same, if not identical.

Second, the claims in the litigation and arbitration are inherently inseparable.  When the claims only involve one harm, the litigation and arbitration are inherently inseparable.  *Waste Mgmt.*, 372 F.3d at 345 ("WM only suffered one alleged harm, so the resulting litigation and the arbitration are 'inherently inseparable' from the instant litigation . . . .").  In both cases, Qualls only alleges one harm—not being paid overtime for the work he performed for EOG through Bedrock.  Thus, Qualls's claims involve only one harm and are inherently inseparable.

Third, the litigation will have a critical impact on the arbitration.  As in *Waste Management*, "[a]llowing the instant litigation to proceed would risk inconsistent results, and 'substantially impact' the arbitration."  372 F.3d at 345.  This is particularly true because both cases contain collective action allegations.  Dkt. 40 at 5.  This proceeding could find that the same class members in the arbitration are or are not similarly situated to Qualls.  Importantly, given that each case will involve the same and similar questions, proceeding with the instant litigation risks forfeiting Qualls's and Bedrock's rights to meaningful arbitration.  *Waste Mgmt.*, 372 F.3d at 343.

Further, this case should be stayed "in accordance with the court's inherent authority." *Citgo*, 2009 WL 960080, at *5.  "A stay may . . . be appropriate where the pending proceeding is an arbitration in which issues involved in the case may be determined."  *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964).  More importantly, the Fifth Circuit has affirmed stays of nonarbitrable claims when related arbitrable claims needed to be resolved.  *See, e.g.*, *Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000) (staying corporations' nonarbitrable claims against business associates because the related claims amongst business associates were subject to arbitration); *Sibley v. Tandy Corp.*, 543 F.2d 540 (5th Cir. 1976) (staying nonarbitrable federal securities claims pending the outcome of arbitrable contractual issues because the former were dependent on the latter).  Here, a discretionary stay is appropriate because the nonarbitrable claims will require the resolution of issues that will be resolved during arbitration.  For example, the arbitration must determine whether Bedrock or EOG was Qualls's employer or if they were co-employers.  Additionally, the arbitration will determine whether the proposed class consists of similarly situated individuals.  The pending litigation and arbitration are essentially the same claims arising from the same facts against two alleged employers.  As such, the resolution of issues

in one case will affect the other. And as illustrated below, the court will tailor the stay "so as not to prejudice" Qualls or any other potential litigants by tolling the statute of limitations for potential class members during the stay. *See Coastal*, 761 F.2d at 204 n.6.

Thus, a mandatory stay is warranted under § 3 of the FAA and *Waste Management*, and a discretionary stay is warranted under the court's inherent authority. Accordingly, EOG's motion to stay is GRANTED.

### III. MOTION FOR EQUITABLE TOLLING

#### A. Legal Standard

"The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (quoting *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)). "Equitable tolling applies only in 'rare and exceptional circumstances.'" *Muhammad v. GBJ, Inc.*, No. H–10–2816, 2011 WL 863785, at *2 (S.D. Tex. Mar. 9, 2011) (Rosenthal, J.) (quoting *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002)). "[I]t is available only when a plaintiff diligently pursues his or her rights." *Id.* "The plaintiffs must demonstrate why their case should be exempt from the standard FLSA rule by showing that they diligently pursued their rights yet were 'unable to discover essential information bearing on the existence' of their claim." *Id.* (quoting *Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992)).

#### B. Analysis

Qualls asks the court to toll the statute of limitations from the date EOG filed its motion to stay until the court rules on a motion to certify. Dkt. 42 at 8. EOG argues that the court should not

6

toll the statute of limitations at all, even if the stay is granted.  Dkt. 47 at 5–10.  A middle ground is warranted in this case.

The court's consideration of the motion to stay and consideration of a potential motion for conditional certification are not sufficiently rare and exceptional circumstances to warrant tolling. Regarding the motion for conditional certification, Qualls does not and cannot show how that is a rare or exceptional circumstance.   Barring an agreement to conditionally certify, a motion for conditional certification will be present in every FLSA case that follows the *Lusardi* test.  *See Badgett v. Tex. Taco Cabana*, *L.P.*, No. H–05–3624, 2006 WL 2934265, at *1–2 (S.D. Tex. Oct. 12, 2006) (Miller, J.) (providing the *Lusardi* two-stage process for conditional certification) . And while every FLSA case may not involve a motion to stay, the mere consideration of the motion to stay does not prevent opt-in plaintiffs from discovering essential information bearing on the existence of their claim.  *See Muhammad*,  2011 WL 863785, at *2.  Thus, to the extent that Qualls asks the court to toll the statute of limitations from the time EOG filed its motion to stay until the court rules on conditional certification, the motion is DENIED.

However, the court agrees with Qualls that the statute of limitations should be tolled during the pendency of the stay.  The stay is a rare and exceptional circumstance that warrants tolling.  *See id.*  While the case is stayed, potential class members will be unable to discover essential information bearing on the existence of their claims because the case will not be moving forward.  *See id.* Indeed, Qualls will be unable to move for conditional certification and provide notice to potential class members regarding the claims against EOG.  And more importantly, potential class members will be unable to opt in during the pendency of the stay.  Thus, some class members' claims may be barred due to the stay even if they diligently pursued their claims.  Regarding EOG's argument that

7

opt-in plaintiffs would somehow be protected due to the arbitration, the court disagrees.  The arbitration could conclude that Bedrock is not an employer and thus dismiss Qualls's, and potential opt-in plaintiffs', claims against Bedrock.  Such a result would not protect the opt-in plaintiffs' rights to potentially recover against EOG.  Because Qualls demonstrates rare and exceptional circumstances to warrant tolling, his motion is GRANTED IN PART.

## IV. CONCLUSION

EOG's motion to stay (Dkt. 40) is GRANTED.  It is therefore ORDERED that this cause of action is STAYED and administratively (statistically) closed.  The parties may move to reinstate the case on the court's active docket at such time in the future as deemed appropriate.  A copy of this order shall be attached as an exhibit to any motion to reinstate.

Qualls's motion for equitable tolling (Dkt. 42) is GRANTED IN PART and DENIED IN PART.  The court ORDERS that the statute of limitations for all members of the proposed FLSA collective action is tolled from the date of this order until the case is reinstated.

Signed at Houston, Texas on May 22, 2018.

_____
Gray H. Miller
United States District Judge